UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE No.:_____

CRISTIAN PORTILLO, NELSON GARCIA,
ELMER PINEDA, JOEL MENDEZ,
NORMA PORTILLO, and Other
similarly-situated individuals,

       Plaintiffs,

vs.

BEAUCHAMP CONSTRUCTION CO., INC
and PIONEER CONSTRUCTION
MANAGEMENT SERVICES, INC,

       Defendants.
_____/

## COMPLAINT
### (OPT-IN PURSUANT TO 29 U.S.C § 216(B))

The Plaintiffs, CRISTIAN PORTILLO, NELSON GARCIA, ELMER PINEDA, JOEL MENDEZ, NORMA PORTILLO (collectively the "Plaintiffs"), and other similarly-situated individuals sue the Defendants, BEAUCHAMP CONSTRUCTION CO., INC and PIONEER CONSTRUCTION MANAGEMENT SERVICES, INC. and allege:

1.     This is an action to recover money damages for unpaid wages under the laws of the United States. This Court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201-219 (Section 216 for jurisdictional placement) ("the Act").

2.     All Plaintiffs are Florida residents residing within this judicial district. All Plaintiffs are covered employees for purposes of the Act.

3.     Defendant, BEAUCHAMP CONSTRUCTION CO., INC. ("Beauchamp") is a Florida company having its main place of business within this judicial district, where Plaintiffs

worked for Beauchamp, who at all times material hereto was and is engaged in interstate commerce.

4.      Defendant, PIONEER CONSTRUCTION MANAGEMENT SERVICES, INC. ("Pioneer") is a Florida company having its main place of business within this judicial district, where Plaintiffs worked for Pioneer, who at all times material hereto was and is engaged in interstate commerce.

**COUNT I: Recovery of Unpaid Wages From Beauchamp—29 USC § 206 (*PORTILLO*)**

5.      Plaintiff, CRISTIAN PORTILLO ("Portillo") re-adopts each and every factual allegation as stated in paragraphs 1-3 above as if set out in full herein.

6.      This action is brought by Portillo and those similarly-situated to recover from Beauchamp unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

7.      Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Beauchamp, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.   At all times pertinent to this Complaint, Beauchamp operates as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Beauchamp obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Beauchamp was at all times material hereto in excess of $500,000 per

annum, and/or Portillo and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

      8.     By reason of the foregoing, Beauchamp is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Beauchamp and those similarly-situated was and/or is engaged in interstate commerce for Beauchamp's business activities involve those to which the Fair Labor Standards Act applies.  Beauchamp is a construction company and, through its business activities, affects interstate commerce.  Portillo's work for the employer likewise affects interstate commerce.  Portillo was employed by Beauchamp as a tile finisher for Beauchamp's business.

      9.     Portillo was employed as a tile finisher performing the same or similar duties of those other similarly-situated tile finishers.

      10.    While employed by Beauchamp, Portillo's regular rate was $20.55 per hour. Portillo worked 40 hours per week from approximately September 10, 2011 to October 10, 2011 and approximately 70 hours per week from October 11, 2011 to December 5, 2011.  From September 10, 2011 through October 10, 2011 Beauchamp underpaid Portillo at $16.00 per hour. From October 11, 2011 to December 5, 2011, Beauchamp did not pay Portillo at all.

      11.    Portillo seeks to recover all unpaid straight and overtime wages from Beauchamp.

      12.    Prior to the completion of discovery and to the best of Portillo's knowledge, at the time of the filing of this complaint, Portillo's **good faith estimate of unpaid wages** is as follows:

    **Actual Damages** (plus interest), representing the amount of unpaid wages for Portillo's work:

    **a.**  From September 10, 2011 to October 10, 2011 = $728.00 [$4.55 (difference between what Portillo was paid and what Portillo should have been paid) x 40 hours worked x 4 weeks]; and

    **b.**  From October 11, 2011 to December 5, 2011 = $13,974 [$20.55 (regular rate) x 40 (regular hours worked) x 8 (weeks) **plus** $30.83 (overtime rate) x 30 (overtime hours worked) x 8 (weeks).

    **c.**  Total: $14,702.00 ($13,974.00 plus 728.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $14,702.00;

**TOTAL DAMAGES OF $29,404.00** plus **reasonable attorneys' fees, interest and costs of suit**.

13. At all times material hereto, Beauchamp failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Portillo and those similarly-situated performed services but no provision was made by Beauchamp to pay them as provided in the Act. The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

14. Beauchamp knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Portillo and those similarly-situated these wages since September 10, 2011, as set forth above, and Portillo and those similarly-situated are entitled to recover double damages. The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

4

15.    Beauchamp willfully and intentionally refused to pay Portillo his wages as required by the law of the United States as set forth above and remains owing Portillo these wages since September 10, 2011, as set forth above.

16.    Portillo has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

PRAYER FOR RELIEF

**WHEREFORE**, Portillo and those similarly-situated request that this Honorable Court:

A.    Enter judgment for Portillo and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.    Award Portillo actual damages in the amount shown to be due for unpaid wages, with interest; and

C.    Award Portillo an equal amount in double damages/liquidated damages; and

D.    Award Portillo reasonable attorneys' fees and costs of suit; and

E.    Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

JURY DEMAND

Portillo and those similarly-situated demand trial by jury of all issues triable as of right by jury.

**COUNT II: Recovery of Unpaid Wages From Pioneer—29 USC § 206 (*PORTILLO*)**

17.    Plaintiff, CRISTIAN PORTILLO ("Portillo") re-adopts each and every factual allegation as stated in paragraphs 1, 2 and 4 above as if set out in full herein.

18.     This action is brought by Portillo and those similarly-situated to recover from Pioneer unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

19.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Pioneer, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.  At all times pertinent to this Complaint, Pioneer operates as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Pioneer obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Pioneer was at all times material hereto in excess of $500,000 per annum, and/or Portillo and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

20.     By reason of the foregoing, Pioneer is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Portillo and those similarly-situated was and/or is engaged in interstate commerce for Pioneer.  Pioneer's business activities involve those to which the Fair Labor Standards Act applies.  Pioneer is a construction company and, through its business activities, affects interstate commerce.  Pioneer's work for the

employer likewise affects interstate commerce.  Portillo was employed by Pioneer as a tile finisher for Pioneer's business.

21.     Pioneer was employed as a tile finisher performing the same or similar duties of those other similarly-situated tile finishers.

22.     While employed by Pioneer, Portillo's regular rate was $20.55 per hour.  Portillo worked 40 hours per week from approximately September 10, 2011 to October 10, 2011 and approximately 70 hours per week from October 11, 2011 to December 5, 2011.  From September 10, 2011 through October 10, 2011 Pioneer underpaid Portillo at $16.00 per hour.  From October 11, 2011 to December 5, 2011, Pioneer did not pay Portillo at all.

23.     Portillo seeks to recover all unpaid straight and overtime wages from Pioneer.

24.     Prior to the completion of discovery and to the best of Portillo's knowledge, at the time of the filing of this complaint, Portillo's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Portillo's work:

a.   From September 10, 2011 to October 10, 2011 = $728.00 [$4.55 (difference between what Portillo was paid and what Portillo should have been paid) x 40 hours worked x 4 weeks]; and

b.   From October 11, 2011 to December 5, 2011 = $13,974 [$20.55 (regular rate) x 40 (regular hours worked) x 8 (weeks) **plus** $30.83 (overtime rate) x 30 (overtime hours worked) x 8 (weeks).

c.   Total: $14,702.00 ($13,974.00 plus 728.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $14,702.00;

**TOTAL DAMAGES OF $29,404.00** plus **reasonable attorneys' fees, interest and costs of suit**.

25.     At all times material hereto, Pioneer failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Portillo and those similarly-situated performed services but no provision was made by Pioneer to pay them as provided in the Act. The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

26.     Pioneer knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Portillo and those similarly-situated these wages since September 10, 2011, as set forth above, and Portillo and those similarly-situated are entitled to recover double damages.  The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

27.     Pioneer willfully and intentionally refused to pay Portillo his wages as required by the law of the United States as set forth above and remains owing Portillo these wages since September 10, 2011, as set forth above.

28.     Portillo has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

PRAYER FOR RELIEF

**WHEREFORE**, Portillo and those similarly-situated request that this Honorable Court:

A.      Enter judgment for Portillo and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.      Award Portillo actual damages in the amount shown to be due for unpaid wages, with interest; and

C.      Award Portillo an equal amount in double damages/liquidated damages; and

D.      Award Portillo reasonable attorneys' fees and costs of suit; and

E.      Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

<u>JURY DEMAND</u>

Portillo and those similarly-situated demand trial by jury of all issues triable as of right by jury.

**COUNT III: Recovery of Unpaid Wages From Beauchamp—29 USC § 206 (*GARCIA*)**

29.     Plaintiff, NELSON GARCIA ("Garcia") re-adopts each and every factual allegation as stated in paragraphs 1-3 above as if set out in full herein.

30.     This action is brought by Garcia and those similarly-situated to recover from Beauchamp unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

31.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Beauchamp, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.  At all times pertinent to this Complaint, Beauchamp operates as an organization which sells and/or markets its services and/or goods to customers from throughout

the United States and also provides its services for goods sold and transported from across state lines of other states, and Beauchamp obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Beauchamp was at all times material hereto in excess of $500,000 per annum, and/or Garcia and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

32.     By reason of the foregoing, Beauchamp is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Garcia and those similarly-situated was and/or is engaged in interstate commerce for Beauchamp.  Beauchamp's business activities involve those to which the Fair Labor Standards Act applies.  Beauchamp is a construction company and, through its business activities, affects interstate commerce.  Garcia's work for the employer likewise affects interstate commerce.   Garcia was employed by Beauchamp as a tile finisher for Beauchamp's business.

33.     Garcia was employed as a tile finisher performing the same or similar duties of those other similarly-situated tile finishers.

34.     While employed by Beauchamp, Garcia's regular rate was $20.55 per hour. Garcia worked 40 hours per week from approximately March 15, 2011 to July 1, 2011 and approximately 70 hours per week from July 2, 2011 to December 5, 2011.  From March 15, 2011 through July 1, 2011 Beauchamp underpaid Garcia at $16.00 per hour.  From July 2, 2011 to December 5, 2011, Beauchamp did not pay Garcia at all.

35.     Garcia seeks to recover all unpaid straight and overtime wages from Beauchamp.

36.     Prior to the completion of discovery and to the best of Garcia's knowledge, at the time of the filing of this complaint, Garcia's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Garcia's work:

   a.   From March 15, 2011 to July 1, 2011 = $2,912.00 [$4.55 (difference between what Garcia was paid and what Garcia should have been paid) x 40 hours worked x 16 weeks]; and

   b.   From July 2, 2011 to December 5, 2011 = $38,428.50 [$20.55 (regular rate) x 40 (regular hours worked) x 22 (weeks) **plus** $30.83 (overtime rate) x 30 (overtime hours worked) x 22 (weeks).

   c.   Total: $41,340.50 ($38,428.50 plus $2,912.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $41,340.50;

**TOTAL DAMAGES OF $82,681.00** plus **reasonable attorneys' fees, interest and costs of suit**.

37.     At all times material hereto, Beauchamp failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Garcia and those similarly-situated performed services but no provision was made by Beauchamp to pay them as provided in the Act.  The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

38.     Beauchamp knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Garcia and those similarly-situated these wages since March 15, 2011, as set forth above, and Garcia and those similarly-situated are entitled to recover double damages.  The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

39.     Beauchamp willfully and intentionally refused to pay Garcia his wages as required by the law of the United States as set forth above and remains owing Garcia these wages since March 15, 2011, as set forth above.

40.     Garcia has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Garcia and those similarly-situated request that this Honorable Court:

A.     Enter judgment for Garcia and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.     Award Garcia actual damages in the amount shown to be due for unpaid wages, with interest; and

C.     Award Garcia an equal amount in double damages/liquidated damages; and

D.     Award Garcia reasonable attorneys' fees and costs of suit; and

E.     Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

<u>JURY DEMAND</u>

Garcia and those similarly-situated demand trial by jury of all issues triable as of right by jury.

**COUNT IV: Recovery of Unpaid Wages From Pioneer—29 USC § 206 (*GARCIA*)**

41.     Plaintiff, NELSON GARCIA ("Garcia") re-adopts each and every factual allegation as stated in paragraphs 1, 2, and 4 above as if set out in full herein.

42.     This action is brought by Garcia and those similarly-situated to recover from Pioneer unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

43.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Pioneer, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.  At all times pertinent to this Complaint, Pioneer operates as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Pioneer obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Pioneer was at all times material hereto in excess of $500,000 per annum, and/or Garcia and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

44.     By reason of the foregoing, Pioneer is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Garcia and those similarly-situated was and/or is engaged in interstate commerce for Pioneer.  Pioneer's business activities involve those to which the Fair Labor Standards Act applies.  Pioneer is a construction company and, through its business activities, affects interstate commerce.  Garcia's work for the employer likewise affects interstate commerce.   Garcia was employed by Pioneer as a tile finisher for Pioneer's business.

45.     Garcia was employed as a tile finisher performing the same or similar duties of those other similarly-situated tile finishers.

46.     While employed by Pioneer, Garcia's regular rate was $20.55 per hour.  Garcia worked 40 hours per week from approximately March 15, 2011 to July 1, 2011 and approximately 70 hours per week from July 2, 2011 to December 5, 2011.  From March 15, 2011 through July 1, 2011 Pioneer underpaid Garcia at $16.00 per hour.  From July 2, 2011 to December 5, 2011, Pioneer did not pay Garcia at all.

47.     Garcia seeks to recover all unpaid straight and overtime wages from Pioneer.

48.     Prior to the completion of discovery and to the best of Garcia's knowledge, at the time of the filing of this complaint, Garcia's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Garcia's work:

   a.  From March 15, 2011 to July 1, 2011 = $2,912.00 [$4.55 (difference between what Garcia was paid and what Garcia should have been paid) x 40 hours worked x 16 weeks]; and

    **b.**  From July 2, 2011 to December 5, 2011 = $38,428.50 [$20.55 (regular rate) x 40 (regular hours worked) x 22 (weeks) **plus** $30.83 (overtime rate) x 30 (overtime hours worked) x 22 (weeks).

    **c.**  Total: $41,340.50 ($38,428.50 plus $2,912.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $41,340.50;

<u>**TOTAL DAMAGES OF $82,681.00**</u> plus **reasonable attorneys' fees, interest and costs of suit**.

49.    At all times material hereto, Pioneer failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Garcia and those similarly-situated performed services but no provision was made by Pioneer to pay them as provided in the Act. The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

50.    Pioneer knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Garcia and those similarly-situated these wages since March 15, 2011, as set forth above, and Garcia and those similarly-situated are entitled to recover double damages.  The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

51.    Pioneer willfully and intentionally refused to pay Garcia his wages as required by the law of the United States as set forth above and remains owing Garcia these wages since March 15, 2011, as set forth above.

52.     Garcia has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Garcia and those similarly-situated request that this Honorable Court:

A.     Enter judgment for Garcia and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.     Award Garcia actual damages in the amount shown to be due for unpaid wages, with interest; and

C.     Award Garcia an equal amount in double damages/liquidated damages; and

D.     Award Garcia reasonable attorneys' fees and costs of suit; and

E.     Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

<u>JURY DEMAND</u>

Garcia and those similarly-situated demand trial by jury of all issues triable as of right by jury.

**<u>COUNT V: Recovery of Unpaid Wages From Beauchamp—29 USC § 206 (*PINEDA*)</u>**

53.     Plaintiff, ELMER PINEDA ("Pineda") re-adopts each and every factual allegation as stated in paragraphs 1-3 above as if set out in full herein.

54.     This action is brought by Pineda and those similarly-situated to recover from Beauchamp unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

55.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Beauchamp, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.   At all times pertinent to this Complaint, Beauchamp operates as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Beauchamp obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Beauchamp was at all times material hereto in excess of $500,000 per annum, and/or Pineda and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

56.     By reason of the foregoing, Beauchamp is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Pineda and those similarly-situated was and/or is engaged in interstate commerce for Beauchamp.  Beauchamp's business activities involve those to which the Fair Labor Standards Act applies.  Beauchamp is a construction company and, through its business activities, affects interstate commerce.  Pineda's work for the employer likewise affects interstate commerce.  Pineda was employed by Beauchamp as a tile finisher for Beauchamp's business.

57.     Pineda was employed as a tile finisher performing the same or similar duties of those other similarly-situated tile finishers.

58.     While employed by Beauchamp, Pineda's regular rate was $20.55 per hour. Pineda worked 40 hours per week from approximately March 15, 2011 to July 1, 2011 and approximately 70 hours per week from July 2, 2011 to December 5, 2011.  From March 15, 2011 through July 1, 2011 Beauchamp underpaid Pineda at $16.00 per hour.  From July 2, 2011 to December 5, 2011, Beauchamp did not pay Pineda at all.

59.     Pineda seeks to recover all unpaid straight and overtime wages from Beauchamp.

60.     Prior to the completion of discovery and to the best of Pineda's knowledge, at the time of the filing of this complaint, Pineda's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Pineda's work:

    a.   From March 15, 2011 to July 1, 2011 = $2,912.00 [$4.55 (difference between what Pineda was paid and what Pineda should have been paid) x 40 hours worked x 16 weeks]; and

    b.   From July 2, 2011 to December 5, 2011 = $38,428.50 [$20.55 (regular rate) x 40 (regular hours worked) x 22 (weeks) **plus** $30.83 (overtime rate) x 30 (overtime hours worked) x 22 (weeks).

    c.   Total: $41,340.50 ($38,428.50 plus $2,912.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $41,340.50;

**TOTAL DAMAGES OF $82,681.00** plus **reasonable attorneys' fees, interest and costs of suit**.

61.     At all times material hereto, Beauchamp failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Pineda and those similarly-situated

performed services but no provision was made by Beauchamp to pay them as provided in the Act.  The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

62.     Beauchamp knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Pineda and those similarly-situated these wages since March 15, 2011, as set forth above, and Pineda and those similarly-situated are entitled to recover double damages.  The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

63.     Beauchamp willfully and intentionally refused to pay Pineda his wages as required by the law of the United States as set forth above and remains owing Pineda these wages since March 15, 2011, as set forth above.

64.     Pineda has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

PRAYER FOR RELIEF

**WHEREFORE**, Pineda and those similarly-situated request that this Honorable Court:

A.     Enter judgment for Pineda and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.     Award Pineda actual damages in the amount shown to be due for unpaid wages, with interest; and

C.     Award Pineda an equal amount in double damages/liquidated damages; and

19

D.      Award Pineda reasonable attorneys' fees and costs of suit; and

E.      Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

<u>JURY DEMAND</u>

Pineda and those similarly-situated demand trial by jury of all issues triable as of right by jury.

**COUNT VI: Recovery of Unpaid Wages From Pioneer—29 USC § 206 (*PINEDA*)**

65.      Plaintiff, ELMER PINEDA ("Pineda") re-adopts each and every factual allegation as stated in paragraphs 1, 2 and 4 above as if set out in full herein.

66.      This action is brought by Pineda and those similarly-situated to recover from Pioneer unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

67.      Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).   Pioneer, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.   At all times pertinent to this Complaint, Pioneer operates as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Pioneer obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.   Upon information and belief, the annual gross revenue of Pioneer was at all times material hereto in excess of $500,000 per

annum, and/or Pineda and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

68.     By reason of the foregoing, Pioneer is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Pioneer and those similarly-situated was and/or is engaged in interstate commerce for Pioneer.  Pioneer's business activities involve those to which the Fair Labor Standards Act applies.  Pioneer is a construction company and, through its business activities, affects interstate commerce.  Pineda's work for the employer likewise affects interstate commerce.    Pineda was employed by Pioneer as a tile finisher for Pioneer's business.

69.     Pineda was employed as a tile finisher performing the same or similar duties of those other similarly-situated tile finisher employees.

70.     While employed by Pioneer, Pineda's regular rate was $20.55 per hour.  Pineda worked 40 hours per week from approximately March 15, 2011 to July 1, 2011 and approximately 70 hours per week from July 2, 2011 to December 5, 2011.  From March 15, 2011 through July 1, 2011 Pioneer underpaid Pineda at $16.00 per hour.  From July 2, 2011 to December 5, 2011, Pioneer did not pay Pineda at all.

71.     Pineda seeks to recover all unpaid straight and overtime wages from Pioneer.

72.     Prior to the completion of discovery and to the best of Pineda's knowledge, at the time of the filing of this complaint, Pineda's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Pineda's work:

    **a.**  From March 15, 2011 to July 1, 2011 = $2,912.00 [$4.55 (difference between what Pineda was paid and what Pineda should have been paid) x 40 hours worked x 16 weeks]; and

    **b.**  From July 2, 2011 to December 5, 2011 = $38,428.50 [$20.55 (regular rate) x 40 (regular hours worked) x 22 (weeks) **plus** $30.83 (overtime rate) x 30 (overtime hours worked) x 22 (weeks).

    **c.**  Total: $41,340.50 ($38,428.50 plus $2,912.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $41,340.50;

**TOTAL DAMAGES OF $82,681.00** plus **reasonable attorneys' fees, interest and costs of suit**.

73.    At all times material hereto, Pioneer failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Pioneer and those similarly-situated performed services but no provision was made by Pioneer to pay them as provided in the Act. The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

74.    Pioneer knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Pineda and those similarly-situated these wages since March 15, 2011, as set forth above, and Pineda and those similarly-situated are entitled to recover double damages.  The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

75.    Pioneer willfully and intentionally refused to pay Pineda his wages as required by the law of the United States as set forth above and remains owing Pineda these wages since March 15, 2011, as set forth above.

76.    Pineda has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Pineda and those similarly-situated request that this Honorable Court:

A.    Enter judgment for Pineda and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.    Award Pineda actual damages in the amount shown to be due for unpaid wages, with interest; and

C.    Award Pineda an equal amount in double damages/liquidated damages; and

D.    Award Pineda reasonable attorneys' fees and costs of suit; and

E.    Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

<u>JURY DEMAND</u>

Pineda and those similarly-situated demand trial by jury of all issues triable as of right by jury.

**<u>COUNT VII: Recovery of Unpaid Wages From Beauchamp—29 USC § 206 (*MENDEZ*)</u>**

77.    Plaintiff, JOEL MENDEZ ("Mendez") re-adopts each and every factual allegation as stated in paragraphs 1-3 above as if set out in full herein.

78.     This action is brought by Mendez and those similarly-situated to recover from Beauchamp unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

79.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Beauchamp, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.   At all times pertinent to this Complaint, Beauchamp operates as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Beauchamp obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Beauchamp was at all times material hereto in excess of $500,000 per annum, and/or Mendez and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

80.     By reason of the foregoing, Beauchamp is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Beauchamp and those similarly-situated was and/or is engaged in interstate commerce for Beauchamp's business activities involve those to which the Fair Labor Standards Act applies.  Beauchamp is a construction company and, through its business activities, affects interstate commerce.

Mendez's work for the employer likewise affects interstate commerce.  Mendez was employed by Beauchamp as a tile finisher for Beauchamp's business.

81.     Mendez was employed as a tile finisher performing the same or similar duties of those other similarly-situated tile finishers.

82.     While employed by Beauchamp, Mendez's regular rate was $20.55 per hour. Mendez worked 40 hours per week from approximately September 10, 2011 to October 10, 2011 and approximately 70 hours per week from October 11, 2011 to December 5, 2011.  From September 10, 2011 through October 10, 2011 Beauchamp underpaid Mendez at $16.00 per hour.  From October 11, 2011 to December 5, 2011, Beauchamp did not pay Mendez at all.

83.     Mendez seeks to recover all unpaid straight and overtime wages from Beauchamp.

84.     Prior to the completion of discovery and to the best of Mendez's knowledge, at the time of the filing of this complaint, Mendez's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Mendez's work:

a.  From September 10, 2011 to October 10, 2011 = $728.00 [$4.55 (difference between what Mendez was paid and what Mendez should have been paid) x 40 hours worked x 4 weeks]; and

b.  From October 11, 2011 to December 5, 2011 = $13,974 [$20.55 (regular rate) x 40 (regular hours worked) x 8 (weeks) **plus** $30.83 (overtime rate) x 30 (overtime hours worked) x 8 (weeks).

c.  Total: $14,702.00 ($13,974.00 plus 728.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $14,702.00;

**<u>TOTAL DAMAGES OF $29,404.00</u>** plus **reasonable attorneys' fees, interest and costs of suit**.

85.     At all times material hereto, Beauchamp failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Mendez and those similarly-situated performed services but no provision was made by Beauchamp to pay them as provided in the Act.   The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

86.     Beauchamp knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Mendez and those similarly-situated these wages since September 10, 2011, as set forth above, and Mendez and those similarly-situated are entitled to recover double damages.   The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

87.     Beauchamp willfully and intentionally refused to pay Mendez his wages as required by the law of the United States as set forth above and remains owing Mendez these wages since September 10, 2011, as set forth above.

88.     Mendez has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Mendez and those similarly-situated request that this Honorable Court:

A.      Enter judgment for Mendez and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.      Award Mendez actual damages in the amount shown to be due for unpaid wages, with interest; and

C.      Award Mendez an equal amount in double damages/liquidated damages; and

D.      Award Mendez reasonable attorneys' fees and costs of suit; and

E.      Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

<u>JURY DEMAND</u>

Mendez and those similarly-situated demand trial by jury of all issues triable as of right by jury.

**COUNT VIII: Recovery of Unpaid Wages From Pioneer—29 USC § 206 (*MENDEZ*)**

89.      Plaintiff, JOEL MENDEZ ("Mendez") re-adopts each and every factual allegation as stated in paragraphs 1, 2 and 4 above as if set out in full herein.

90.      This action is brought by Mendez and those similarly-situated to recover from Pioneer unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

91.      Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Pioneer, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.  At all times pertinent to this Complaint, Pioneer operates as an organization which sells and/or markets its services and/or goods to customers from throughout

the United States and also provides its services for goods sold and transported from across state lines of other states, and Pioneer obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Pioneer was at all times material hereto in excess of $500,000 per annum, and/or Mendez and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

92.     By reason of the foregoing, Pioneer is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Mendez and those similarly-situated was and/or is engaged in interstate commerce for Pioneer.  Pioneer's business activities involve those to which the Fair Labor Standards Act applies.  Pioneer is a construction company and, through its business activities, affects interstate commerce.  Mendez's work for the employer likewise affects interstate commerce.   Mendez was employed by Pioneer as a tile finisher for Pioneer's business.

93.     Mendez was employed as a tile finisher performing the same or similar duties of those other similarly-situated tile finishers.

94.     While employed by Pioneer, Mendez's regular rate was $20.55 per hour.  Mendez worked 40 hours per week from approximately September 10, 2011 to October 10, 2011 and approximately 70 hours per week from October 11, 2011 to December 5, 2011.  From September 10, 2011 through October 10, 2011 Pioneer underpaid Mendez at $16.00 per hour.   From October 11, 2011 to December 5, 2011, Pioneer did not pay Mendez at all.

95.     Mendez seeks to recover all unpaid straight and overtime wages from Pioneer.

96.     Mendez to the completion of discovery and to the best of Mendez's knowledge, at the time of the filing of this complaint, Mendez's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Mendez's work:

    a.  From September 10, 2011 to October 10, 2011 = $728.00 [$4.55 (difference between what Mendez was paid and what Mendez should have been paid) x 40 hours worked x 4 weeks]; and

    b.  From October 11, 2011 to December 5, 2011 = $13,974 [$20.55 (regular rate) x 40 (regular hours worked) x 8 (weeks) **plus** $30.83 (overtime rate) x 30 (overtime hours worked) x 8 (weeks).

    c.  Total: $14,702.00 ($13,974.00 plus 728.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $14,702.00;

**TOTAL DAMAGES OF $29,404.00** plus **reasonable attorneys' fees, interest and costs of suit**.

97.     At all times material hereto, Pioneer failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Mendez and those similarly-situated performed services but no provision was made by Pioneer to pay them as provided in the Act. The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

98.     Pioneer knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Mendez and those similarly-situated these wages since September 10, 2011, as set forth above, and Mendez and those similarly-situated are entitled to recover double damages.  The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

99.     Pioneer willfully and intentionally refused to pay Mendez his wages as required by the law of the United States as set forth above and remains owing Mendez these wages since September 10, 2011, as set forth above.

100.     Mendez has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

PRAYER FOR RELIEF

**WHEREFORE**, Mendez and those similarly-situated request that this Honorable Court:

A.     Enter judgment for Mendez and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.     Award Mendez actual damages in the amount shown to be due for unpaid wages, with interest; and

C.     Award Mendez an equal amount in double damages/liquidated damages; and

D.     Award Mendez reasonable attorneys' fees and costs of suit; and

E.     Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

JURY DEMAND

Mendez and those similarly-situated demand trial by jury of all issues triable as of right by jury.

### COUNT IX: Recovery of Unpaid Wages From Beauchamp—29 USC § 206 (*NORMA*)

101.    Plaintiff, NORMA PORTILLO ("Norma") re-adopts each and every factual allegation as stated in paragraphs 1-3 above as if set out in full herein.

102.    This action is brought by Norma and those similarly-situated to recover from Beauchamp unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

103.    Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Beauchamp, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.  At all times pertinent to this Complaint, Beauchamp operates as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Beauchamp obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Beauchamp was at all times material hereto in excess of $500,000 per annum, and/or Norma and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

104.    By reason of the foregoing, Beauchamp is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as

defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Norma and those similarly-situated was and/or is engaged in interstate commerce for Beauchamp. Beauchamp's business activities involve those to which the Fair Labor Standards Act applies. Beauchamp is a construction company and, through its business activities, affects interstate commerce. Norma's work for the employer likewise affects interstate commerce. Norma was employed by Beauchamp as a tile and marble helper for Beauchamp's business.

105. Norma was employed as a tile and marble helper performing the same or similar duties of those other similarly-situated tile and marble helpers.

106. While employed by Beauchamp, Norma's regular rate was $18.55 per hour. Norma worked 40 hours per week from approximately March 15, 2011 to July 1, 2011 and approximately 70 hours per week from July 2, 2011 to December 5, 2011. From March 15, 2011 through July 1, 2011 Beauchamp underpaid Norma at $11.00 per hour. From July 2, 2011 to December 5, 2011, Beauchamp did not pay Norma at all.

107. Norma seeks to recover all unpaid straight and overtime wages from Beauchamp.

108. Prior to the completion of discovery and to the best of Norma's knowledge, at the time of the filing of this complaint, Norma's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Norma's work:

   a. From March 15, 2011 to July 1, 2011 = $4,832.00 [$7.55 (difference between what Norma was paid and what Norma should have been paid) x 40 hours worked x 16 weeks]; and

    **b.**   From July 2, 2011 to December 5, 2011 = $34,688.50 [$18.55 (regular rate) x 40 (regular hours worked) x 22 (weeks) **plus** $27.83 (overtime rate) x 30 (overtime hours worked) x 22 (weeks)].

    **c.**   Total: $39,520.50 ($34,688.50 plus $4,832.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $39,520.50;

**TOTAL DAMAGES OF $79,041** plus **reasonable attorneys' fees, interest and costs of suit**.

109.    At all times material hereto, Beauchamp failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Norma and those similarly-situated performed services but no provision was made by Beauchamp to pay them as provided in the Act. The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

110.    Beauchamp knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Norma and those similarly-situated these wages since March 15, 2011, as set forth above, and Norma and those similarly-situated are entitled to recover double damages. The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

111.    Beauchamp willfully and intentionally refused to pay Norma her wages as required by the law of the United States as set forth above and remains owing Norma these wages since March 15, 2011, as set forth above.

112.    Norma has retained the law offices of the undersigned attorney to represent her in this action and is obligated to pay a reasonable attorneys' fee.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Norma and those similarly-situated request that this Honorable Court:

A.    Enter judgment for Norma and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.    Award Norma actual damages in the amount shown to be due for unpaid wages, with interest; and

C.    Award Norma an equal amount in double damages/liquidated damages; and

D.    Award Norma reasonable attorneys' fees and costs of suit; and

E.    Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

<u>JURY DEMAND</u>

Norma and those similarly-situated demand trial by jury of all issues triable as of right by jury.

**<u>COUNT X: Recovery of Unpaid Wages From Pioneer—29 USC § 206 (*NORMA*)</u>**

113.    Plaintiff, NORMA PORTILLO ("Norma") re-adopts each and every factual allegation as stated in paragraphs 1, 2 and 4 above as if set out in full herein.

114.    This action is brought by Norma and those similarly-situated to recover from Pioneer unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206.

115.    Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b).  Pioneer, is and, at all times pertinent to this Complaint, was engaged in interstate commerce.  At all times pertinent to this Complaint, Pioneer operates as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Pioneer obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees.  Upon information and belief, the annual gross revenue of Pioneer was at all times material hereto in excess of $500,000 per annum, and/or Norma and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

116.    By reason of the foregoing, Pioneer is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Pioneer and those similarly-situated was and/or is engaged in interstate commerce for Pioneer.  Pioneer's business activities involve those to which the Fair Labor Standards Act applies.  Pioneer is a construction company and, through its business activities, affects interstate commerce.  Norma's work for the employer likewise affects interstate commerce.   Norma was employed by Pioneer as a tile and marble helper for Pioneer's business.

117.    Norma was employed as a tile and marble helper performing the same or similar duties of those other similarly-situated tile and marble helpers.

118.    While employed by Pioneer, Norma's regular rate was $18.55 per hour.  Norma worked 40 hours per week from approximately March 15, 2011 to July 1, 2011 and approximately 70 hours per week from July 2, 2011 to December 5, 2011.  From March 15, 2011 through July 1, 2011 Pioneer underpaid Norma at $11.00 per hour.   From July 2, 2011 to December 5, 2011, Pioneer did not pay Norma at all.

119.    Norma seeks to recover all unpaid straight and overtime wages from Pioneer.

120.    Prior to the completion of discovery and to the best of Norma's knowledge, at the time of the filing of this complaint, Norma's **good faith estimate of unpaid wages** is as follows:

**Actual Damages** (plus interest), representing the amount of unpaid wages for Norma's work:

> **d.**  From March 15, 2011 to July 1, 2011 = $4,832.00 [$7.55 (difference between what Norma was paid and what Norma should have been paid) x 40 hours worked x 16 weeks]; and
>
> **e.**  From July 2, 2011 to December 5, 2011 = $34,688.50 [$18.55 (regular rate) x 40 (regular hours worked) x 22 (weeks) **plus** $27.83 (overtime rate) x 30 (overtime hours worked) x 22 (weeks)].
>
> **f.**  Total: $39,520.50 ($34,688.50 plus $4,832.00)

**Liquidated Damages** representing an equal amount in double damages/liquidated damages of $39,520.50;

**TOTAL DAMAGES OF $79,041** plus **reasonable attorneys' fees, interest and costs of suit**.

121.    At all times material hereto, Pioneer failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Pioneer and those similarly-situated

performed services but no provision was made by Pioneer to pay them as provided in the Act. The additional persons who may become Plaintiffs in this action are employees and/or former employees of the employer who are and who were subject to the unlawful payroll practices and procedures of the employer and were not paid for their services.

122.    Pioneer knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Norma and those similarly-situated these wages since March 15, 2011, as set forth above, and Norma and those similarly-situated are entitled to recover double damages.  The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

123.    Pioneer willfully and intentionally refused to pay Norma her wages as required by the law of the United States as set forth above and remains owing Norma these wages since March 15, 2011, as set forth above.

124.    Norma has retained the law offices of the undersigned attorney to represent her in this action and is obligated to pay a reasonable attorneys' fee.

PRAYER FOR RELIEF

**WHEREFORE**, Norma and those similarly-situated request that this Honorable Court:

A.    Enter judgment for Norma and other similarly-situated and against the Employer on the basis of Employer's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.    Award Norma actual damages in the amount shown to be due for unpaid wages, with interest; and

C.    Award Norma an equal amount in double damages/liquidated damages; and

D.      Award Norma reasonable attorneys' fees and costs of suit; and

E.      Grant such other and further relief as this Court deems equitable and just and/or

available pursuant to Federal Law.

## JURY DEMAND

Norma and those similarly-situated demand trial by jury of all issues triable as of right by

jury.


Dated: January 18, 2012.

Respectfully submitted,


By:  /s/ R. Martin Saenz
R. Martin Saenz, Esq.
Fla. Bar No.:  0640166
THE SAENZ LAW FIRM, P.A.
20900 NE 30th Avenue, Ste 800
Aventura, Florida 33180
Telephone: (305) 503.5131
Facsimile:  (888) 270.5549